Citation Nr: 1504644 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 08-06 315 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky


THE ISSUE

Entitlement to service connection for a left eye disorder.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel


INTRODUCTION

The Veteran served on active duty from April 1957 to May 1961. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2007 rating decision, by the Louisville, Kentucky RO which, in part, denied the Veteran's claim of entitlement to service connection for partial blindness in both eyes. 

On November 6, 2008, the Veteran appeared at the RO and testified at a videoconference hearing before a Veterans Law Judge, sitting in Washington, D.C. A transcript of the hearing is of record. 

In February 2009, the Board remanded the Veteran's appeal to the RO via the Appeals Management Center (AMC) in Washington, D.C., for additional development. Following the requested development, a supplemental statement of the case (SSOC) was issued in February 2011. In May 2011, the Board again remanded the case to the RO for further evidentiary development. Following the requested development, an SSOC was issued in May 2012. 

In December 2013, the Board remanded the claim for further evidentiary development. The Appeals Management Center (AMC) completed the requested development and issued another SSOC in March 2014. Review of the record reflects substantial compliance with the Board's remand directives. Stegall v. West, 11 Vet. App. 268, 271 (1998). (Service connection for right eye disability and a deviated nasal septum was awarded by the AMC in March 2014.)

The Veterans Law Judge who conducted the November 2008 hearing is no longer employed at the Board. In an April 2014 letter, the Board advised the Veteran that it would afford him the opportunity to provide testimony before another Veterans Law Judge. He was also advised that he was to respond within 30 days if he wanted another hearing and that if no response was received within the prescribed time period, the Board would assume that he did not want another hearing. The Veteran did not respond. 

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a) (2) (West 2014).) 


FINDING OF FACT

The Veteran's currently diagnosed left eye primary open angle glaucoma, epiretinal membrane, and dry eye open-angle glaucoma are not related to his period of active service or any incident therein. 


CONCLUSION OF LAW

The Veteran does not have a left eye disorder that is the result of disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 4.9 (2014). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2014). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim; and to indicate which information and evidence VA will obtain and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims has held that VCAA notice should be provided to a claimant before the initial RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, if VCAA notice is provided after the initial decision, such a timing error can be cured by subsequent readjudication of the claim, as in a statement of the case (SOC) or supplemental SOC (SSOC). Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

In this case, VA satisfied its duty to notify by means of letters dated in November 2006 and May 2007 from the RO to the Veteran, which were issued prior to the RO decision in June 2007. Additional letters were issued in March 2009, July 2010, May 2011, March 2012, and January 2014. Those letters informed the Veteran of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. Accordingly, the requirements the Court set out in Pelegrini have been satisfied. 

The Board finds that the content of the above-noted letters provided to the Veteran complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. 

The Board notes that the Veteran's service treatment records are unavailable. In January 2009, the National Personnel Records Center (NPRC) indicated that the records may have been destroyed in a fire at the records center in 1973. Many subsequent attempts were made to obtain the service treatment records, to no avail; all of those attempts have been documented in the record. The Court has held that in cases where records once in the hands of the government are lost, the Board has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule where applicable. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). The analysis below has been undertaken with this heightened duty in mind. The case law does not, however, lower the legal standard for proving a claim for service connection but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the claimant. See Russo v. Brown, 9 Vet. App. 46 (1996). 

The Board is unaware of any outstanding evidence or information that has not already been requested. The Veteran has been afforded a VA examination on the issue decided herein. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The report reflects that the examiner solicited symptoms from the Veteran, examined him, and provided a diagnosis consistent with the record. Therefore, the examination is adequate. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

Accordingly, the Board finds that VA has satisfied its duty to notify and assist the Veteran. No useful purpose would be served in remanding the question addressed herein for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The Court has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

II. Background

The record indicates that the Veteran served on active duty from April 1957 to May 1961. The Veteran's discharge certificate (DD Form 214) indicates that his military occupational specialty was as a light vehicle driver with an antiaircraft artillery battery. In January 2009, the National Personnel Records Center (NPRC) certified that the Veteran's service records had been destroyed by a fire. 

The Veteran's claim of entitlement to service connection for a bilateral eye disorder (VA Form 21-526) was received in October 2006. Submitted in support of the claim were VA progress notes dated from June 1997 to December 2007. These records show that the Veteran received clinical attention and treatment for a bilateral eye disorder. In April 2007, the Veteran was diagnosed with resolved recurrent post-operative uveitis, left eye, and open angle glaucoma in the left eye. In October 2007, the Veteran was diagnosed with pseudophakia of both eyes. A VA progress note dated October 31, 2007, reflect diagnoses of suspected glaucoma in the left eye and pseudophakia of both eyes. 

A Formal Finding on Unavailability of Service Treatment Records dated March 12 2007 held that all reasonable efforts to obtain service medical records for the period April 9, 1957, to May 3, 1961, had been unsuccessful. 

In his notice of disagreement (NOD), received in September 2007, the Veteran stated that he sustained an injury to his left eye when he was struck in the face by another man whom he discovered braking into a locker; he noted that a fight occurred and the other soldier struck him in the face. The Veteran indicated that he later developed problems with his eyes, including vision problems caused by detached retina. 

At his personal hearing in November 2008, the Veteran reported that he had just gotten out of basic training, arrived in the at the Air Force Base, and was assigned to a room. The Veteran related that he went to take a shower and change his clothes before reporting to the order room for sizing. The Veteran testified that, when he came out of the shower, this person was coming out of his room with the Veteran's fatigue uniform in his hand; when the Veteran asked about it, the individual hit him in the right eye, broke his nose and knocked him to the ground. This person had taken the uniform out of the Veteran's locker without permission. The Veteran indicated that he went to the base hospital later that day and the doctors told him that they could not do anything about the broken nose and that his eye would go down and be alright. The Veteran indicated that he never received any private treatment while in military service. The Veteran noted that the person's name was C.W.; he stated that he never told anyone about the incident, except for others who were in his squadron. 

Of record is a response from the National Personnel Records Center (NPRC), dated in November 2010, indicating that searches of Tyndall Air Force Base (AFB) for 1957 were conducted, but no records were located. Another response from NPRC, on Form 3101, dated in December 2010, indicated that searches of the 4756 supply squadron at Tindall AFB hospital for 1957 produced no clinical records for this Veteran. 

Also of record is a formal finding of unavailability, dated December 30 2010, wherein the RO stated that it has been determined that the Veteran's STRs and personnel records were unavailable for review. It was noted that all procedures to obtain these records had been followed and all efforts to obtain the records had been exhausted. Therefore, it was concluded that further attempts to obtain said records would be futile. 

Received in May 2011 were VA progress notes dated from March 2008 to May 2011, which show that the Veteran received ongoing clinical attention and treatment for a bilateral eye disorder. A VA progress note dated in March 2010 reflects diagnoses of left eye open angle glaucoma and pseudophakia of both eyes. 

Received in January 2012 was a treatment report from Dr. Mark Lynn and Associates, dated in June 2011, which reflects diagnoses of presbyopia, floaters, open angle glaucoma and pseudophakia of the left eye. 

Received in July 2012 was a statement from Retina Vitreous Resource Center, dated in October 2006, indicating that the Veteran's clinical information had been inactive for over 10 years; therefore, the records were destroyed. Attached to that statement were treatment records from Dr. Norman Radtke, dated from July 1994 to January 1996, reflecting treatment for a right eye disorder, diagnosed as vitreous hemorrhage, vitreous degeneration, and retinal detachment. These records do not reflect any diagnoses of or treatment for a left eye disorder. 

The Veteran was afforded a VA examination in January 2014, at which time he reported suffering an injury in 1957 due to blunt force from a fist to the right eye and nose. He reported itching and vision loss in the right eye, and itching in the left eye. The diagnoses were traumatic right eye retinal detachment with glaucoma, corneal decompensation, and no light perception. The examiner opined that the Veteran's current right eye disorders (no light perception due to history of traumatic retinal detachment with subsequent complications including traumatic glaucoma and corneal decompensation) were traceable to the Veteran's active service during which he was punched in the face in 1957. However, he stated that the Veteran's current left eye disorders (primary open angle glaucoma, epiretinal membrane, dry eye) were not a result of any service-related activity. Rather, the examiner stated that the left eye conditions were age-related problems and not due to the Veteran's past history. 

Received in March 2014 were VA progress notes dated from February 1999 to October 2009, reflecting ongoing treatment for bilateral eye disorders. In December 2002, the Veteran was seen in the general eye clinic for annual eye examination; he stated that the vision in his left eye had gotten "blurrier" over the past 2 weeks. No other problems were reported. No pertinent diagnosis was noted. The Veteran was next seen in July 2003 for slightly elevated intraocular pressure of the left eye; the diagnosis was cataract. In April 2006, the Veteran was seen for 1 month check; he had no complaints except for poor vision. The pertinent diagnosis was cataract. In August 2006, the Veteran was seen with complaints of drainage and slight pain in left eye; it was noted that he had surgery 5 weeks earlier. He was diagnosed with post-op cataract surgery. In May 2006, the Veteran was referred to the ophthalmology clinic due to intraocular pressure staying too high; no noticeable changes were noted. 

III. Analysis

Service connection may be granted for disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d). (Refractive errors of the eye are not diseases or injuries within the meaning of applicable legislation for disability compensation purposes. 38 C.F.R. §§ 3.303(c), 4.9.) 

To establish service connection, there must be a competent diagnosis of a current disability; medical or, in certain cases, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. Hickson v. West, 12 Vet. App. 247, 252 (1999); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a) (1). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a) (2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

As noted above, the Veteran's STRs are presumed lost in the 1973 NPRC fire. In cases such as these, VA has a heightened duty to explain its findings and conclusions and to consider carefully the benefit-of-the- doubt rule. O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991); Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992). The Board's analysis of this Veteran's claim is undertaken with this duty in mind. 

The Veteran has several eye disorders including uveitis, pseudophakia, and open-angle glaucoma. In addition, the record also contains evidence of refractive error. As noted above, refractive error is not a disease or injury within the meaning of applicable legislation for disability compensation purposes and may not be service connected. See 38 C.F.R. § 3.303(c). 

With respect to service connection for any other eye disorder, the Board finds that the preponderance of the evidence is against the claim of service connection for a left eye disorder. Significantly, the earliest recorded medical history of problems involving the left eye was in July 2003, more than 42 years after the Veteran's separation from active service in 1961; he was subsequently diagnosed with resolved recurrent post-op uveitis in the left eye, open angle glaucoma left eye, and pseudophakia in October 2006, more than 45 years after his discharge from service. These dates leave a significant gap between service and the initial objective demonstration of cataracts and glaucoma. Moreover, while the post-service treatment records include diagnoses of cataracts, pseudophakia and open angle glaucoma, none of these records suggests any relationship between an eye disorder and his military service. Rather, following a VA examination in January 2014, the VA examiner stated that the Veteran's current left eye disorders (primary open angle glaucoma, epiretinal membrane, dry eye) were not a result of any service-related activity. Rather, the examiner stated that the left eye conditions were age-related and not due to the Veteran's past history. 

The Board has considered the arguments advanced by the Veteran that his left eye problems are related to his period of military service. Lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of a disability or symptoms of a disability subject to lay observation. However, he has not been shown to possess the requisite training or credentials needed to render a competent opinion as to medical causation. As such, his lay opinion does not constitute competent medical evidence and lacks probative value. 38 U.S.C.A. § 1153(a); 38 C.F.R. §§ 3.303(a), 3.159(a); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Moreover, to the extent that the holding in Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) can be interpreted to enable a lay person to speak as to etiology in some limited circumstances involving only observable factors, the question of causation here involves complex issues that the Veteran is not competent to address. Accordingly, his own opinion and theories about his left eye disorders do not constitute competent medical evidence in support of his claim, and thus carry no probative weight on the critical question in this matter of medical causation. 

In sum, after review of the record, the Board finds that service connection for a left eye disability is not warranted. The benefit-of-the-doubt doctrine is not for application where, as here, the weight of the evidence is against the claim. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for a left eye disability is denied. 



________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs